```
1                  UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF MISSISSIPPI
2                       NORTHERN DIVISION

3

4    UNITED STATES OF AMERICA

5         vs.          Criminal Action Nos. 3:17CR108 AND 3:16CR76

6    RODNEY NELSON

7

8

9          COURT REPORTER'S TRANSCRIPT OF CHANGE OF PLEA

10

            BEFORE HONORABLE DANIEL P. JORDAN, III
11             UNITED STATES DISTRICT COURT JUDGE

12                      OCTOBER 5, 2017
                      Jackson, Mississippi
13

14

15   APPEARANCES:

16   MR. JERRY RUSHING
     Assistant United States Attorney
17
          Representing the Government,
18        United States of America

19

20   MR. MICHAEL KNAPP
     Attorney at Law
21
          Representing the Defendant,
22        Rodney Nelson

23   COURT REPORTER:
     Brenda D. Wolverton, RPR, CRR, FCRR
24   Jackson, Mississippi

25
```

1           THE COURT:  Good morning.

2           MR. RUSHING:  On the docket today we have United

3    States versus Rodney Nelson.  It's Cause No. 3:16cr76-DPJ-LRA

4    and also Cause No. 3:17cr108-DPJ-LRA.  In 3:16cr76, Your Honor,

5    he is changing his plea to guilty to Count 4 of the indictment

6    or was supposed to today.  And as to 3:17cr108, that's an

7    information of a felon in possession of a firearm which he

8    intends to plead guilty today on.

9           THE COURT:  Thank you.  All right.  Mr. Nelson,

10   Mr. Rushing just told us that it is your intent this morning to

11   enter a plea of guilt as to Count 4 of the indictment and also

12   enter a plea of guilt as to the charge in the information.  Is

13   that correct?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  As you know, there are some

16   questions I need to ask you.  You need to make sure that you

17   give us a truthful response, so our courtroom deputy here is

18   going to give you an oath.

19       (*Whereupon the defendant was sworn.*)

20          THE COURT:  As you know, we're going to make a

21   recording of everything that you and I say.  It's going to be

22   important that you answer out loud.  Try not to say uh-huh or

23   nuh-uh like you just did because that's hard to transcribe.  I

24   need for you to say yes or no.  Okay?

25          THE DEFENDANT:  Yes, sir.

```
1              THE COURT:  All right.  What's your full name?

2              THE DEFENDANT:  Rodney Nelson.

3              THE COURT:  Mr. Nelson, I know we have done this

4    before.  I'm just going to start from the beginning so we have

5    everything in one place.  I'm going to ask you some questions

6    you have already heard.  As I mentioned the last time, if you

7    don't understand the question or if you can't hear it, please

8    let me know because I want to make sure you understand before

9    you answer.  Okay?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  If you want to speak with your attorney,

12   let me know and I will let you do that.  All right?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  If you answer the question I'm going to

15   assume that you heard it, that you understood it and that you

16   gave me a truthful response.  Is that fair?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Okay.  Tell me again how old you are.

19             THE DEFENDANT:  39.

20             THE COURT:  And how far did you go in school?

21             THE DEFENDANT:  10th grade.

22             THE COURT:  And are you able to read and write?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  And have you ever been treated for any

25   mental illnesses?
```

```
 1              THE DEFENDANT:  No, sir.

 2              THE COURT:  Have you ever been treated for any

 3    addictions to narcotic drugs of any kind?

 4              THE DEFENDANT:  Yes, sir.

 5              THE COURT:  Okay.  And tell me about that again.

 6              THE DEFENDANT:  I was addicted to drugs.  I went

 7    through drug court.

 8              THE COURT:  Okay.  And how long ago was that?

 9              THE DEFENDANT:  Oh, about 2013, somewhere in that

10    area.

11              THE COURT:  Okay.  And are you currently under the

12    influence of any drug, medication or alcoholic beverage of any

13    kind?

14              THE DEFENDANT:  No, sir.

15              THE COURT:  All right.  Thank you.  Are you capable of

16    talking with your attorney and understanding what he is telling

17    you?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  And are you able to convey your thoughts

20    to him?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  Do you understand why we are here today

23    and what's happening?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  And do you understand the seriousness of
```

1   the proceedings?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  And on the date of the offense as charged

4   in the indictment and the information, were you mentally

5   capable of knowing the difference between right and wrong?

6        THE DEFENDANT:  I kind of wasn't because I was under

7   the influence of drugs.

8        THE COURT:  Okay.  And did you self-intoxicate?  In

9   other words, did you take those drugs of your own free will?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Nobody forced you to take the drugs?

12        THE DEFENDANT:  No, sir.

13        THE COURT:  Okay.  All right.  Mr. Knapp, I know you

14   have met with your client a number of times.  Is he capable of

15   effectively communicating with you?

16        MR. KNAPP:  Yes, Your Honor.

17        THE COURT:  Okay.  And is he able to understand these

18   proceedings?

19        MR. KNAPP:  Yes, Your Honor.

20        THE COURT:  And do you have any reservations with

21   respect to his competence to enter a plea?

22        MR. KNAPP:  No, Your Honor.

23        THE COURT:  Does the government?

24        MR. RUSHING:  No, Your Honor.

25        THE COURT:  All right.  Mr. Nelson, have you read both

1    the indictment and the information against you in these two

2    separate cases?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  And did you have a chance to discuss the

5    indictment and the information with your attorney?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Did you have a chance to ask him any

8    questions you might have about what they say?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Okay.  And did you have a chance to

11    discuss your case in general with Mr. Knapp?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Okay.  And to discuss any possible

14    defenses that you might have as to the charges in the

15    indictment and the information?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Okay.  Having had that conversation and

18    having read both the indictment and the information, can you

19    tell me that you fully understand what the government has

20    charged you with in those two documents?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Is there anything about the charge in

23    Count 4 or the information that you are still unclear about or

24    fuzzy about in terms of what they are charging you with?

25           THE DEFENDANT:  No, sir.

1          THE COURT:  Okay.  Mr. Knapp, would you agree you have

2    had those conversations and he does understand the charges

3    against him in the indictment and the information?

4          MR. KNAPP:  Yes, Your Honor.

5          THE COURT:  Okay.  Mr. Nelson, are you satisfied with

6    the amount of time you have had to spend with your attorney?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Are you satisfied with the amount of time

9    he has spent on your case?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And are you fully satisfied with the

12    counsel, representation and advice given to you in this case by

13    Mr. Knapp?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  All right.  If you have any complaints

16    about your attorney, today is the best day to let us know.  Any

17    kind of complaints you want to talk about?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  I understand that you have had a series of

20    conversations with the government about entering a plea as to

21    Count 4 of the indictment and the information.  Is that

22    correct?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Okay.  And that those -- I think those

25    conversations resulted in two plea agreements and two

1  supplements.  Is that right?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  And did you have a chance to read

4  and discuss those four documents with your attorney before you

5  signed them?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Did you have a chance to ask Mr. Knapp any

8  questions you might have had about what those documents say?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  And was he able to answer your questions

11 for you?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Okay.  Mr. Knapp, would you agree with

14 that?

15         MR. KNAPP:  I agree, Your Honor.

16         THE COURT:  All right.  Mr. Rushing, if you would like

17 to give us the highlights?

18         MR. RUSHING:  Yes, Your Honor.  Of course, there is

19 two plea agreements and two plea supplements, one as to each

20 different charge that he is pleading guilty to today.  Both of

21 them contain certain waivers that I will talk about in just a

22 few seconds.  The supplement in each one of those cases contain

23 our actual recommendation that the government will make at the

24 sentencing of the defendant.

25         In addition, the plea agreements provide for the two

1   different charges to run consecutively, too, Your Honor.

2        As part of the plea agreement, the defendant waived

3   the right to appeal the conviction and the sentence or the

4   manner in which the sentence was imposed under any grounds

5   whatsoever except he does reserve the right to raise

6   ineffective assistance of counsel claims.  He also waives the

7   right to contest the conviction and the sentence or the manner

8   in which the sentence was imposed in any post-conviction

9   proceeding, and that includes a motion under Title 28, United

10   States Code, Section 2255.

11        He also waives the right to seek attorneys fees and/or

12   costs under the Hyde Amendment.  Additionally, he waives all

13   rights whether asserted by himself or by a representative to

14   request or to receive records about his case under either the

15   Freedom of Information Act or the Privacy Act.

16        He also acknowledges and agrees any factual issues

17   regarding his sentencing will be resolved by the court under a

18   preponderance of the evidence standard, and he waives any right

19   to a jury determination of those sentencing issues.

20        He also agrees that in making its decision on

21   sentencing the court may consider relevant evidence without

22   regard to its admissibility under the rules of evidence.

23        Those are some of the terms of the actual plea

24   agreement, Your Honor.  Of course, there are other standard

25   terms in there.  The plea agreements and the plea supplements

1    have been signed by the defendant, by myself and by Mr. Knapp,

2    Your Honor.

3         THE COURT:  Okay.  Thank you.  All right.  Mr. Nelson,

4    is that consistent with your understanding?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  And, Mr. Knapp, is it consistent with

7    yours?

8         MR. KNAPP:  Yes, Your Honor.

9         THE COURT:  All right.  Part of what Mr. Rushing just

10   mentioned is a series of waivers that are contained in

11   Paragraph 8, A through E, of the plea agreement, and I want to

12   make sure that everybody is on the same page.  Do you

13   understand that in these two plea agreements that you are

14   waiving the right to appeal the conviction and the sentence

15   imposed in this case or the manner in which that sentence was

16   imposed under any grounds whatsoever?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  Do you understand that you are also

19   waiving the right to contest the conviction and sentence or the

20   manner in which the sentence was imposed in any post-conviction

21   proceedings, including but not limited to a habeas petition

22   under Section 2255?  Do you understand that?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Have you discussed all of these waivers

25   here with your attorney?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And do you understand what you are waiving

3   or giving up in those paragraphs?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  And are you voluntarily agreeing to

6   those waivers?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And are you knowingly and voluntarily

9   agreeing to all of the terms of both pleas and both plea

10  supplements?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you want me to say that again?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Okay.  Sure.  So we have four documents.

15  Right?  Two plea agreements and two supplements.  And I want to

16  make sure that you are knowingly and voluntarily agreeing to

17  the terms of those four documents.  In other words, nobody is

18  forcing you to do it.

19         THE DEFENDANT:  No, sir.  Nobody is.

20         THE COURT:  And you understand what they say?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Do the terms of the two plea agreements

23  and the two supplements represent your whole understanding with

24  the government?

25         THE DEFENDANT:  I don't understand the question.

1          THE COURT:  Sure.  Well, has anybody promised you

2      anything that's not reflected in one of those documents?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Are there any kind of side agreements out

5      there?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Are you expecting any kind of benefits

8      that aren't reflected in those documents?

9          THE DEFENDANT:  No, sir.

10         THE COURT:  Okay.  So nobody has made any different

11     kinds of promises or assurances in any way other than what's

12     reflected in those documents?

13         THE DEFENDANT:  No, sir.  No one has.

14         THE COURT:  Okay.  Do you understand that the terms of

15     the plea agreements and the supplements are merely

16     recommendations and that I could reject those recommendations

17     without allowing you to withdraw your plea of guilty and impose

18     a sentence that's more severe than you may anticipate?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Okay.  Yes, sir?

21         MR. RUSHING:  To advise the court, the court is aware

22     of this, but I want to make sure it is in the record also.

23     There was a former plea agreement made in this case.  We went

24     over it with the court I believe before in this matter.  Of

25     course this is a different plea agreement that he is agreeing

1    to.  But that's the only two we have ever had, Your Honor, as I

2    recall, sir.

3        THE COURT:  Thank you.  Mr. Rushing, while you are

4    standing, I usually look but I forgot to look.  Are there

5    stipulations in either of them?

6        MR. RUSHING:  No, Your Honor.

7        THE COURT:  Okay.  Thank you.  Mr. Knapp, do you have

8    the documents?

9        MR. KNAPP:  I do, Your Honor.

10       THE COURT:  Please approach.

11   (DOCUMENTS TENDERED TO COURT)

12       THE COURT:  Thank you.  The plea agreement as to

13   3:16cr76 is fully executed and it will be received in the

14   record.  The plea supplement as to that same case appears to be

15   in order and it's going to be received under seal.

16       The plea agreement as to 3:17cr108 is also fully

17   executed and otherwise appears to be in order.  It is received

18   in the record.  And the plea supplement in that case is also

19   fully executed and otherwise appears to be in order and is

20   received under seal.

21   (EXHIBITS MARKED)

22       THE COURT:  Has anyone attempted in any way to force

23   you to plead guilty in this case?

24       THE DEFENDANT:  No, sir.

25       THE COURT:  Are you pleading guilty of your own free

1   will because you are guilty of the charges there in the

2   information and in Count 4 of the indictment?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Okay.  Do you understand that the offenses

5   that you are pleading guilty to here today are felony offenses?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Do you understand that if I accept your

8   plea you will be adjudged guilty of those offenses?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  And do you understand that such

11  adjudication may deprive you of valuable civil rights such as

12  the right to vote, the right to hold public office, the right

13  to serve on a jury and the right to possess any kind of

14  firearm?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  I also want to make sure you understand

17  the maximum possible penalties provided by law and any

18  mandatory minimum penalties.  I'm going to kind of do these

19  together.  I'm going to refer to the charges under 841(a)(1) in

20  the original case as the drug charges.  Okay?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And then I will refer to the charges in

23  the information which charges you under 18 U.S.C. Section

24  922(g)(1) as the gun charge.  Okay?

25          THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  All right.  Do you understand that Count 4

 2   of the indictment in the drug case carries a term of

 3   incarceration of not less than five years and not more than 40

 4   years?

 5              THE DEFENDANT:  Yes, sir.

 6              THE COURT:  And do you understand the term of

 7   incarceration as to the gun charge is not more than 10 years?

 8              THE DEFENDANT:  Yes, sir.

 9              THE COURT:  Okay.  Mr. Nelson, I know based on that

10   charge that you obviously have a prior felony.  How many prior

11   felonies do you have?

12              THE DEFENDANT:  Two.

13              THE COURT:  Two before this one?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Let me ask the probation officer.  I just

16   want to make sure there is not the possibility that he would be

17   an armed career criminal.  Are you aware of any other felonies

18   out there?  Mr. Rushing, you are standing.

19              MR. RUSHING:  Your Honor, one of the felonies he is

20   convicted of was a possession of cocaine in state court, and

21   that by itself would not be a drug trafficking crime.  Simple

22   possession is what the conviction was.

23              THE COURT:  Okay.  So you are comfortable that he is

24   not going to qualify as an armed career criminal?

25              MR. RUSHING:  I think so, Your Honor.  The other
```

1  conviction that I am aware of is a possession of a firearm by a

2  convicted felon also.  That would not be a crime of violence I

3  don't believe either.  And Mr. Knapp can verify that, Your

4  Honor.  I think he has talked to his client also to verify

5  that.

6          THE COURT:  Mr. Knapp?

7          MR. KNAPP:  Your Honor, I have and have also done

8  legal research on the issue and I don't think either felony

9  comes under the career criminal.

10          THE COURT:  Mr. Nelson, the reason I'm asking those

11  questions is because if you had three or more violent felony

12  convictions or serious drug offenses or a combination of both,

13  then in this case the term of incarceration would be not less

14  than 15 years and not more than life.  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Okay.  All right.  Do you also understand

17  that as to the drug case that there is a possible fine of up to

18  $5 million?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you understand that as to the gun case

21  that there is a possible fine of up to $250,000?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Do you understand as to the drug case that

24  you would receive a term of supervised release of not less than

25  four years?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  And that as to the gun case a term of

3   supervised release would be not less than three years?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  Do you understand that you would have to

6   serve this term of supervised release after you are released

7   from prison?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  Do you understand that while you are on

10   supervised release there will be rules you have to follow?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Do you understand that if you broke those

13   rules you could be sent back to jail?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Do you understand that if that happened

16   you could be sent back for the full term of supervised release

17   and you wouldn't get any credit for time you had already served

18   on supervised release?

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  All right.  Do you understand that in this

21   case that I would order you to forfeit certain property to the

22   government?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Okay.  Do you understand that if it's

25   applicable, and I don't know that it is, but if it's

1  applicable, I could also order you to pay restitution to any

2  victims of the offense?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you understand that there is a

5  mandatory special assessment of $100 per count, so $200 in this

6  case?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Do you understand that these

9  things I have just mentioned are all possible consequences of

10 entering your plea today?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  All right.  Have you had a chance to

13 discuss the sentencing guidelines with Mr. Knapp?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Okay.  You understand that the guidelines

16 are there to help me determine what the appropriate sentence is

17 for your case?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Okay.  Do you understand that I cannot

20 tell you today what the guideline range is for your case?

21         THE DEFENDANT:  You say you can't tell me?

22         THE COURT:  I can't tell you today.  Do you understand

23 that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Okay.  Before we can do that, there has to

```
1    be a presentence report.  We have to investigate the facts.  We
2    have to do the guideline calculations and then you will get a
3    report and we will all have a chance to make objections if we
4    see them.  But until all that happens, there is no way today to
5    tell us what that actual guideline range is going to be.  Do
6    you understand?
7              THE DEFENDANT:  Yes, sir.
8              THE COURT:  I am sure you have talked to Mr. Knapp
9    about it and I'm sure he may have given you some estimates, but
10   you understand that the guideline range that ends up applying
11   in these cases could be very different from any estimate that
12   Mr. Knapp gave you?
13             THE DEFENDANT:  Yes, sir.
14             THE COURT:  Okay.  Do you understand that the
15   guidelines are advisory only which means I'm going to consider
16   them but I'm not required to follow them?
17             THE DEFENDANT:  Yes, sir.
18             THE COURT:  So once we figure out what your range is,
19   I would have the discretion to enter a sentence that's either
20   more lengthy or less lengthy than what the guidelines call for.
21   Do you understand that?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  Do you also understand that parole has
24   been abolished and that if you are sentenced to prison you will
25   not be released on parole?
```

```
 1              THE DEFENDANT:  Yes, sir.

 2              THE COURT:  Okay.  All right.  I also want to make

 3    sure that you understand that by entering a plea today in these

 4    cases that you are going to waive some rights that you would

 5    otherwise have.  Do you understand that you have the right to

 6    plead not guilty to any offense that's been charged against

 7    you?

 8              THE DEFENDANT:  Yes, sir.

 9              THE COURT:  And do you understand you don't have to

10    change that plea if you don't want to?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  Do you understand that if you were to

13    plead not guilty that you would be entitled to a trial by a

14    jury?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  And do you understand that at trial you

17    would be presumed innocent and I would tell the jury that the

18    government would have the burden of proving your guilt beyond a

19    reasonable doubt?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Do you understand that you would have the

22    right to the assistance of counsel for your defense at trial

23    and at every stage of the proceedings?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  And you know that if you couldn't afford
```

1    an attorney I would appoint one for you?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you understand that if we had a trial

4    you would have the right to be here in the courtroom so you

5    could see and hear all the witnesses?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Do you understand you would also have the

8    right to have your attorney ask those witnesses questions?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that you would have the

11   right on your own part to decline to testify if you didn't want

12   to?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Do you also understand that if you wanted

15   to testify you would be allowed to do so?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Okay.  Do you understand that you could

18   issue subpoenas that would compel witnesses to come to court

19   and testify in your defense?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Okay.  Do you understand that if you

22   decided not to put on any evidence at all, call no witnesses,

23   you don't testify, you don't offer any exhibits, even if you

24   didn't put on any evidence that the jury could not hold that

25   against you?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you also understand that by entering

3     this plea today in these two separate cases that if I accept

4     the plea you will be adjudged guilty of both those offenses,

5     the drug offense and the gun offense?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Okay.  And you understand that by entering

8     this plea you are going to waive or give up your right to a

9     trial and all these other rights related to trials that I just

10    listed?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Also I want to make sure you understand

13    what's called the essential elements of the offense.  In any

14    criminal case there are certain things that the government must

15    prove beyond a reasonable doubt.  The government has to prove

16    all of them.  They can't prove like for example two out of

17    three.  They have got to prove all three.

18         So let's start with the drug case.  You are charged in

19    Title 21 of United States Code Section 846 which makes it a

20    crime for anyone to conspire with someone else to commit a

21    violation of certain controlled substances laws of the United

22    States.

23         MR. RUSHING:  Your Honor, that should have been 841, I

24    think.

25         THE COURT:  I'm sorry.  I was just reading the

1    elements you sent.  What is it?

2              MR. RUSHING:  841(a)(1).  It's possession with intent

3    to distribute cocaine base, Your Honor.  I'm sorry.

4              THE COURT:  Then I have got the wrong elements here.

5    Let me go back.

6              MR. RUSHING:  I have a copy, Your Honor.

7              THE COURT:  That will be faster.  Thanks.

8        (DOCUMENT TENDERED TO COURT)

9              THE COURT:  Thank you.  All right.  Let me start that

10   over again.  You are charged in Title 21, Section 841(a)(1),

11   which makes it a crime for anyone knowingly or intentionally to

12   possess a controlled substance with intent to distribute it.

13   Cocaine base is a controlled substance within the meaning of

14   this law.  For a jury to find you guilty of this offense it

15   must be convinced that the government has proven each of the

16   following elements beyond a reasonable doubt:

17             First that the defendant knowingly possessed a

18   controlled substance; second that the substance was, in fact,

19   cocaine base; third that the defendant possessed the substance

20   with intent to distribute it; and fourth that the quantity of

21   the substance was at least 28 grams of cocaine base.

22             All right.  Now, looking at the gun charge, the

23   elements that the government would have to prove beyond a

24   reasonable doubt for that offense are first that the defendant

25   knowingly possessed a firearm as charged; second that before

1    the defendant possessed the firearm the defendant had been

2    convicted in a court of a crime punishable by imprisonment for

3    a term in excess of one year; and third that the firearms and

4    ammunition possessed had traveled in or affected interstate

5    commerce.  In other words, before you possessed them that they

6    had traveled at some time from one state to another.

7            All right.  Have you discussed the essential elements

8    of both of those crimes with Mr. Knapp?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Okay.  And do you understand first that it

11   is the government's burden to prove each and every essential

12   element of both crimes before a jury could convict you of

13   either of those crimes?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  And do you understand substantively what

16   the government has to prove with regard to each of those

17   elements?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  All right.  Do you have any questions or

20   are you unclear about any of the elements of those offenses?

21           THE DEFENDANT:  No, sir.

22           THE COURT:  Mr. Knapp, would you agree you have had

23   those conversations and your client does understand the

24   essential elements of the offense?

25           MR. KNAPP:  I have, Your Honor, and I think he

1   understands the essential elements.

2           THE COURT:  Thank you.  Mr. Nelson, at this point

3   Mr. Rushing is going to tell us the facts that he would have

4   presented to the jury had you elected to go to trial.  And I

5   will ask you to listen closely because when he is finished I'm

6   going to ask you to tell me if you agree with what he said.

7   All right?

8           THE DEFENDANT:  Yes, sir.

9           MR. RUSHING:  Your Honor, had the government gone to

10  trial, the government would have shown through the introduction

11  of exhibits and the testimony of witnesses to prove beyond a

12  reasonable doubt that back in 2014 the DEA had information that

13  Mr. Nelson was involved in the distribution of controlled

14  substances.

15          As to Count 4 of the indictment in Cause No. 3:16cr76,

16  the government would have offered and shown that agents were

17  able to use an undercover MBN agent to contact Mr. Nelson on

18  September 19th, 2014, in an attempt to purchase cocaine base or

19  crack cocaine rather from Mr. Nelson.

20          The undercover agent agreed to meet Mr. Nelson at the

21  Kentucky Fried Chicken on Northside Drive in Jackson,

22  Mississippi.  And that's in Hinds County, Your Honor.  The

23  agent then went to the Kentucky Fried Chicken and Mr. Nelson

24  arrived and got into the vehicle with the agent.  Mr. Nelson

25  then gave the agent two plastic bags containing cocaine base

1    and the agent gave Mr. Nelson $4,700 for the cocaine base.

2         Mr. Nelson also asked the undercover agent if he was

3    interested in purchasing PCP.  The substance seized that day

4    from Mr. Nelson through the purchase was sent to the crime

5    laboratory and tested and found to be 116 grams of cocaine

6    base.  That's the factual basis as to Count 4 in Cause No.

7    3:16cr76, Your Honor.

8         As to the Cause No. 3:17cr108, the government would

9    have shown that on February 19th, 2015, agents were able to

10   overhear a conversation where Mr. Nelson indicated he was in

11   possession of a firearm.  Agents were able to maintain

12   surveillance on Mr. Nelson as he went to a home on Lilly Street

13   to conduct a purchase of PCP.  After Mr. Nelson left the

14   residence he was stopped by the Hinds County Sheriff's Office.

15   They searched his vehicle and found a .45 caliber Springfield

16   pistol in his front passenger seat and an AK-47 assault rifle

17   in the floor of the back seat.  They also found a small bottle

18   of PCP on the seat at that time, too.

19        Mr. Nelson was arrested but released.  Later agents

20   overheard a conversation where Mr. Nelson told someone that the

21   police took his 45 and AK.  The government would have also

22   called an expert witness who would have testified that the two

23   firearms seized that day from the defendant, one was

24   manufactured in Croatia, the other was manufactured in Romania,

25   and therefore had traveled in interstate and foreign commerce.

```
 1              The government would have also shown at the time the
 2    defendant possessed the weapons he had a prior felony
 3    conviction, and that is that on about July of 2013 he was
 4    convicted in the First Judicial District of Hinds County in
 5    Cause Number 01-0-990-0BBD for the felony crime of possession
 6    of cocaine and he received a sentence to four years in the
 7    custody of the Mississippi Department of Corrections, but that
 8    was suspended for two years supervised probation, Your Honor.
 9              The government would have shown all these acts
10    occurred in the Southern District of Mississippi and within the
11    jurisdiction of this court.
12              THE COURT:  All right.  Thank you.  Mr. Nelson, did
13    you hear and understand everything that Mr. Rushing told us?
14              THE DEFENDANT:  Yes, sir.
15              THE COURT:  And do you agree with the facts that he
16    just told us?
17              THE DEFENDANT:  No, sir.
18              THE COURT:  All right.  What do you disagree with?
19              THE DEFENDANT:  For the gun and stuff I wasn't
20    arrested in 2013.  I was sentenced to drug court.
21              THE COURT:  Okay.  Back up.  What about the arrest?
22              THE DEFENDANT:  I wasn't arrested on that day.
23              MR. RUSHING:  He was released.  I agree with that.
24              THE COURT:  Okay.  You were released.  You were
25    stopped.
```

1          THE DEFENDANT:  Yes, sir, I was stopped.

2          THE COURT:  And they found the guns with you?

3          THE DEFENDANT:  Yes, sir, and they told me to go ahead

4    on.  Yes, sir.

5          THE COURT:  Okay.  All right.  I think everybody is on

6    the same page about that.  And you are not denying that you

7    have a prior felony conviction?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Okay.  All right.  Mr. Rushing, are you

10   satisfied?

11         MR. RUSHING:  Yes, Your Honor.  He does agree that the

12   prior felony conviction is the one for possession of cocaine.

13   Is that correct, Mr. Nelson?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  All right.  I think that's a sufficient

16   factual basis there.

17         Mr. Nelson, how do you now wish to plead as to Count 4

18   in Cause No. 3:16cr76?  Guilty or not guilty?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  And how do you wish to plead as to the

21   charge in the information in Case No. 3:17cr108?  Guilty or not

22   guilty?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  All right.  It is the finding of the court

25   in the two cases of United States versus Rodney Nelson, Cause

1    Numbers 3:16cr76 and 3:17cr108, that having viewed the

2    defendant in court and considered his demeanor and responses,

3    the defendant is fully competent and capable of entering an

4    informed plea, that the defendant is aware of the nature of the

5    charges and the consequences of the plea and that the plea of

6    guilty is a knowing and voluntarily plea supported by an

7    independent basis in fact containing each of the essential

8    elements of the offense.

9          The plea is therefore accepted and the defendant is

10   now adjudged guilty of Count 4 of the indictment and the charge

11   in the information in the two cases.

12         All right.  Counsel, I'm looking at January 3rd which

13   is a Wednesday as a sentencing date.

14         MR. RUSHING:  I'm good that day, Your Honor.

15         MR. KNAPP:  Your Honor, if I could have just one

16   moment?

17         THE COURT:  Of course.

18     (SHORT PAUSE)

19         MR. KNAPP:  Your Honor, I am free on January 3rd.

20   What time again was it?

21         THE COURT:  I didn't say.  Let's put it at 1:00.  Is

22   that the first day -- I don't have my calendar in front of me.

23   Is that the first day after the holidays?

24         MR. KNAPP:  The 2nd is a Wednesday after the holidays,

25   I think, Your Honor.

```
1              THE COURT:  Okay.  So let's do 1:00 on January 3rd.

2              MR. KNAPP:  Your Honor, I understand the procedures

3    and what probation has to do and all of this, but my client has

4    asked me if we could do it as quickly as possible, sooner than

5    that.  I have explained to him what all has to be done, and he

6    asked me to do that.

7              THE COURT:  Mr. Nelson, I appreciate that.  I can't do

8    it right now.  First of all, in a case like this, you know,

9    there is a criminal history that they have got to figure out,

10   and it takes some time to get that information.  I will also

11   tell you that we just inherited 600 Puerto Rican pretrial

12   detainees that are now in our district, and our probation

13   officers are going to have some responsibilities with them.  So

14   they are a bit overloaded.  So I'm going to keep it at the

15   normal time.

16             Mr.  Rushing, you were standing.  Do you have a

17   conflict?

18             MR. RUSHING:  I don't, Your Honor.  I just wanted to

19   clarify something for the record.

20             THE COURT:  Sure.

21             MR. RUSHING:  Mr. Nelson is correct.  I think I said

22   his conviction for the possession of cocaine was back in 2013

23   in July, and it is July of 2003, Your Honor.

24             THE COURT:  Okay.  Does that sound right, Mr. Nelson?

25             THE DEFENDANT:  Yes, sir.
```

1    THE COURT:  All right.  So we will set it at 1:00

2    January 3rd.  Obviously if something comes up we will work with

3    the parties and get the right time.

4    All right.  Mr. Nelson, between now and then, as I

5    mentioned a couple of times now, the probation officer is going

6    to prepare a presentence report.

7    THE DEFENDANT:  Yes, sir.

8    THE COURT:  That report is going to have information

9    in it about this offense but also about your background.  Some

10   of the information is going to come from you.  Some of it will

11   come from other sources like employers or education records,

12   things like that.  It is obviously really important that you be

13   truthful with the probation officers when you speak with them.

14   Also I want to tell you you have the right to have

15   your attorney present whenever you meet with probation.  I'm

16   going to strongly encourage you to make sure Mr. Knapp is with

17   you.  The only way to mess this up between now and sentencing

18   is to say something stupid to the probation officer.  And

19   sometimes people go into those meetings without an attorney and

20   they hurt their case.  All right?  So you have a right to have

21   them present, and I suggest that you have Mr. Knapp with you.

22   Okay?

23   THE DEFENDANT:  Yes, sir.

24   THE COURT:  All right.  After that report is done, you

25   will get a copy and so will Mr. Rushing.  Both sides will have

1    a chance to make objections if there is anything in there that

2    you don't agree with.  If you cannot work out the objections

3    between the government and also the probation officer, then I

4    will rule on the objections when we come back for your

5    sentencing hearing.

6            Also when you come back for your sentencing hearing

7    you will at that time have the right of allocution which just

8    means you can tell me anything that you think I need to know

9    before the sentence is imposed.  And you can speak for yourself

10   or through your attorney or both.  It will be completely up to

11   you, but you will get that chance before we impose a sentence.

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  All right.  Mr. Rushing, is there anything

14   else from the government at this point?

15           MR. RUSHING:  No, Your Honor.

16           THE COURT:  Mr. Knapp, anything further from you?

17           MR. KNAPP:  No, Your Honor.

18           THE COURT:  All right.  Thank you.  We're adjourned.

19

20

21

22

23

24

25

1                         CERTIFICATE OF REPORTER

2

3          I, BRENDA D. WOLVERTON, Official Court Reporter,

4    United States District Court, Southern District of

5    Mississippi, do hereby certify that the above and foregoing

6    pages contain a full, true and correct transcript of the

7    proceedings had in the aforenamed case at the time and

8    place indicated, which proceedings were recorded by me to

9    the best of my skill and ability.

10         I certify that the transcript fees and format

11   comply with those prescribed by the Court and Judicial

12   Conference of the United States.

13         This the 20th day of February, 2018.

14

15                              s/ Brenda D. Wolverton_____
                                BRENDA D. WOLVERTON, RPR-CRR
16

17

18

19

20

21

22

23

24

25